IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


AUDRA ALLEN,                                Case No. 1:13-cv-01523-AA

        Plaintiff,                      OPINION AND ORDER

   v.

CAROLYN W. COLVIN,
Commissioner of Social
Security,

        Defendant.
_____

Phil Studenberg
Attorney-at-Law, PC
230 Main St.
Klamath Falls, OR 97601
    Attorney for plaintiff

S. Amanda Marshall
United States Attorney
Ronald K. Silver
Assistant United States Attorney
1000 S.W. Third Ave., Suite 600
Portland, OR 97201

Courtney Garcia
Special Assistant United States Attorney
Social Security Administration
701 Fifth Ave., Suite 2900 M/S 221A
Seattle, WA 98104-7075
    Attorneys for defendant

1 - OPINION AND ORDER

AIKEN, Chief Judge:

Plaintiff brings this action pursuant to the Social Security Act (Act) to obtain judicial review of the final decision of the Commissioner of Social Security (Commissioner) denying her application for supplemental security income (SSI) under the Act. The Commissioner's decision is affirmed and this case is dismissed.

## DISCUSSION

Plaintiff argues that the ALJ erred by: 1) rejecting the medical opinion evidence of her treating physician; 2) concluding that she refused to follow mental health treatment recommendations; 3) concluding that her physical and mental impairments did not rise to the level of meeting listings 1.02, 1.03, or 12.04; and 4) finding that jobs with less than 100,000 positions nationally are jobs that exist in "significant numbers." Pl.'s Br. 1-4.

## I. Rejection of Plaintiff's Treating Physician's Medical Opinion

Plaintiff argues that the ALJ improperly gave controlling weight to Dr. John Morse, M.D., a medical expert, over the opinion of her treating physician, Dr. Jamie Rich, M.D.. Pl.'s Br. 1.

The ALJ evaluated Dr. Rich's opinion and held that her opinion was not entitled to controlling weight because it "was largely based upon [plaintiff's] subjective accounts, provided little explanation or rationale, and was contradicted by the opinions of other physicians." Tr. 22. Dr. Rich first saw plaintiff on January 3, 2013, the same day she completed a check-box form

2 - OPINION AND ORDER

indicating that plaintiff had extensive exertional and postural limitations and an inability to work.[1] Tr. 506, 513-14.

To reject an uncontradicted opinion of a treating doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence. Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995). If contradicted, the ALJ may reject the opinion with specific and legitimate reasons. Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005) (citing Lester, 81 F.3d at 830-31). Although the contrary opinion of a non-treating medical expert does not alone constitute a specific, legitimate reason for rejecting a treating physician's opinion, it may constitute substantial evidence when it is consistent with other independent evidence in the record. Magallanes v. Bowen, 881 F.2d 747, 752 (9th Cir. 1989). Finally, a "physician's opinion of disability 'premised to a large extent upon the claimant's own accounts of [her] symptoms and limitations' may be disregarded where those complaints have been 'properly discounted.'" Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 602 (9th Cir. 1999) (quoting Fair v. Bowen, 885 F.2d 597, 605 (9th Cir. 1989)).

The ALJ found plaintiff's accounts that Dr. Rich relied on regarding the intensity, persistence, and limiting effects of her

---

[1] Prior to this time, plaintiff was seen by Andrew Hughes, FNP. Tr. 370-80, 520. According to the regulations, the ALJ was not obligated to consider the records from Mr. Hughes, a nurse practitioner, as a medical source. 20 C.F.R. 416.913(a).

3 - OPINION AND ORDER

symptoms, not credible. In finding plaintiff's complaints not credible, the ALJ noted inconsistency with the medical evidence, specifically the objective evidence that her medications were "relatively effective in controlling [her] symptoms," plaintiff's refusal of counseling, the conservative nature of her treatment, and the extensive nature of her daily activities. Tr. 21, 31, 386, 454, 515. The ALJ noted that plaintiff's activities of daily living are extensive and include: personal care, preparing meals, doing laundry, cleaning, driving, paying bills, watching television, doing puzzles, writing poetry, listening to music, reading, watching movies, shopping, socializing with friends, visiting her mother, and going to church. Tr. 21, 41-47, 248-51, 304-07. These are legally sufficient reasons to discount plaintiff's subjective complaints, as well as Dr. Rich's opinion based on such complaints.

The ALJ noted that in addition to Dr. Rich's opinion being based largely on plaintiff's subjective symptom testimony, her opinion was also contradicted by Dr. John Morse, the impartial medical expert, Dr. Gregory Cole, the psychological examiner, and Dr. Jon McKellar, the musculoskeletal consultative examiner. Tr. 21. Dr. Cole opined that plaintiff's "delayed memory capability was considered to be at an average level," she "was able to sustain simple routine tasks, and no problems completing a simple multiple-step task were observed," and that "she did not meet full

behavioral criterial for a diagnosis of bipolar disorder." Tr. 21, 497. Dr. McKellar opined that plaintiff "can stand and walk for 30 minutes to an hour at a time four hours a day; sit for a normal 8-hour day with normal breaks; and lift and carry 20 pounds regularly, [and] 30 pounds occasionally." Tr. 21, 501.

In order to give plaintiff "all reasonable consideration," the ALJ gave less weight to Dr. Cole and Dr. McKellar's less restrictive residual functional capacities (RFC) and ultimately adopted Dr. Morse's more restrictive RFC "due to its consistency with the record as a whole." Tr. 21. Further, the ALJ pointed to specific and legitimate instances where Dr. Rich's opinion was contradicted by the assessments of Drs. Morse, Cole, and McKellar. Tr. 15-16, 18-22. The record also reveals that Dr. Rich's opinion of plaintiff's disability was contradicted by her own report of plaintiff's markedly positive response to medical treatment. For example, on the same day that Dr. Rich opined that plaintiff had extensive exertional and postural limitations and was permanently unable to work, listing knee ankylosed, knee arthritis, and chronic pain as the only physical ailments, she also gave plaintiff an injection in her knee joints, which led her to opine that plaintiff sustained an eighty percent improvement in her right knee and a ninety percent improvement in her left knee. Tr. 511-14.

Because the ALJ pointed to specific and legitimate instances of Dr. Rich's opinion being contradicted by other doctors, as well

5 - OPINION AND ORDER

as being based on plaintiff's subjective complaints that he found not credible, this Court finds that the ALJ did not err in rejecting Dr. Rich's opinion.

II. <u>Plaintiff's Failure to Follow Mental Health Recommendations</u>

Plaintiff argues that the ALJ improperly assumed she refused to follow mental health treatment recommendations without considering that she had "little to no resources for paying for mental health therapy." Pl.'s Br. 4.

The record reveals that plaintiff rejected counseling on May 7, 2009, as well as on August 6, 2010, stating that she "felt that if she would get on her medications, that would help [with] her symptoms." Tr. 375, 386. The ALJ noted that "[t]his demonstrates a possible unwillingness to do which is necessary to improve her condition," and "it may also be an indication that her symptoms are not as severe as she purports." Tr. 21. This Court agrees.

An "unexplained, or inadequately explained, failure to seek treatment may be the basis for an adverse credibility finding unless one of a number of good reasons for not doing so applies." <u>Orn v. Astrue</u>, 495 F.3d 625, 638 (9th Cir. 2007) (internal citation omitted). However, the claimant cannot be denied benefits for failing to obtain treatment that would ameliorate his condition if she cannot afford that treatment. <u>Gamble v. Chater</u>, 68 F.3d 319, 321 (9th Cir. 1995).

Here, the record reveals that plaintiff declined counseling,

6 - OPINION AND ORDER

not because she could not afford it, but instead because she felt that medications alone would help with her symptoms. As such, this Court finds that the ALJ did not err by factoring plaintiff's failure to seek treatment into her adverse credibility finding.

III. <u>Listing Determination</u>

Plaintiff argues that the ALJ erred by concluding that neither her suicide attempts nor the opinions of psychological evaluators Drs. Dorothy Anderson and Paul Rethinger rose to the level of meeting listing 12.04.[2] Pl.'s Br. 4.

To meet the listing requirements of 12.04, the criteria of either paragraph B or C must be satisfied. To satisfy the paragraph B criteria, plaintiff's mental impairments must result in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. Tr. 16; 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04(B). To satisfy the part C criteria, plaintiff's mental impairments must result in:

---

[2] Plaintiff also seemingly argues that the ALJ erred by concluding that listings 1.02 and 1.03 were not met. Pl.'s Br. 3-4. However, as previously noted in Section I above, the ALJ properly gave more weight to Dr. Morse, who opined that none of plaintiff's impairments medically meet or equal any of the listed impairments. Tr. 16, 49. Thus, the ALJ did not err by finding that plaintiff's physical impairments do not meet listing 1.02 or 1.03.

7 - OPINION AND ORDER

> (1) repeated episodes of decompensation, each of extended duration; or (2) a residual disease . . . that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or (3) current history of 1 or more years' inability to function outside a highly supportive living arrangement.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04(C).

The ALJ held that the "severity of [plaintiff's] mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 12.04." Tr. 16. Specifically, the ALJ found that plaintiff had only mild restrictions of daily living activities, as evidenced by plaintiff's ability to perform the extensive daily activities discussed above. Id. Further, the ALJ found that plaintiff had moderate difficulties in social functioning as evidence by plaintiff living with her sister, going out alone, shopping in stores, spending time with friends, visiting her mother, going to church, watching movies with friends, and having no problems getting along with family, friends, neighbors, or others. Tr. 16, 246, 306-08.

With regard to concentration, persistence, or pace, the ALJ found that plaintiff had moderate difficulties. The ALJ noted that plaintiff has enough concentration to perform household chores, operate a motor vehicle, read, and watch movies. Tr. 16. Further, the ALJ noted that during the hearing, he observed that plaintiff did not "demonstrate or manifest any difficulty concentrating" and

8 - OPINION AND ORDER

when questioned, she "paid attention throughout the hearing" and "appeared to understand and process the questions without difficulty as she responded to the questions appropriately and without delay." Id.

Finally, the ALJ noted that plaintiff has experienced no episodes of decompensation of extended duration. The ALJ, therefore, held that "because [plaintiff's] mental impairments do not cause at least two marked limitations or one marked limitation and repeated episodes of decompensation, each of extended duration, the paragraph B criteria are not satisfied." Id. Further, the ALJ found that because no evidence of a residual disease process that a minimal increase in mental demands or change in the environment would be predicted to cause plaintiff to decompensate, and no evidence or current history of one or more years' inability to function outside a highly supportive living arrangement, the paragraph C criteria also were not satisfied. Tr. 17.

Plaintiff cites to no evidence that contradicts the ALJ's discussion of 12.04 and how plaintiff's impairments do not meet the listing. Accordingly, this Court finds that the ALJ did not err by concluding that neither her suicide attempts, nor the opinions of psychological evaluators rose to the level of meeting listing 12.04.

IV. Jobs With Fewer Than 100,000 Positions Nationally

Plaintiff argues that the ALJ improperly accepted jobs that

9 - OPINION AND ORDER

have less than 100,000 positions nationally as jobs that exist in "significant numbers." Pl.'s Br. 4.

The ALJ posed a hypothetical to the vocational expert (VE) that included all of plaintiff's limitations. Tr. 51-53. The VE identified that someone with plaintiff's limitations could perform work as a small products assembler, which has 22,000 jobs nationally, or as a mail clerk, which has 77,000 jobs nationally. Tr. 53. Consequently, the ALJ found that 99,000 jobs constituted a significant number of jobs in existence in the national economy that plaintiff could perform. Tr. 23.

An individual shall be determined disabled for the purpose of Social Security disability if her impairments are so severe that "she is not only unable to do her previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). If a court finds either the national number or local number of jobs to be "significant," it must uphold the ALJ's decision. Beltran v. Astrue, 700 F.3d 386, 389-90 (9th Cir. 2012).

Although there is no bright-line rule for what constitutes a "significant number" of jobs, an ALJ's finding that 25,000 jobs nationally constitutes a significant number of jobs was recently upheld. See Gutierrez v. Comm'r of Soc. Sec., 740 F.3d 519, 528 (9th Cir. 2014). Consequently, this Court finds that the ALJ did

10 - OPINION AND ORDER

not err by finding that jobs with 99,000 positions nationally constitutes jobs that exist in significant numbers.

## CONCLUSION

For the foregoing reasons, the Commissioner's decision is AFFIRMED.

IT IS SO ORDERED.

DATED this 8 day of October 2014.

_____
Ann Aiken
United States District Judge

11 - OPINION AND ORDER